## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:24-cv-00650 |
| | ) | |
| v. | ) | |
| | ) | |
| KENIA RODRIGUEZ, aka | ) | |
| KENIA LEGON, individually and | ) | |
| operating under the fictitious entity | ) | |
| known as RODRIGUEZ TAX | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION

The United States of America complains and alleges as follows:

1.     The United States brings this action to enjoin the Defendant, Kenia Rodriguez, under any alias or any entity through which she conducts business, and all persons and entities in active concert or participation with her, from directly or indirectly:

a.     Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself and her spouse;

1

b.     Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself and her spouse;

c.     Owning, managing, controlling, assisting, profiting from, volunteering for, or working for a business that prepares or assists in the preparation of tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents;

d.     Using an EFIN, EIN, TIN, PTIN, SSN, or any other federally issued identification number to prepare or file federal income tax returns;

e.     Using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN or EFIN;

f.     Owning, managing, controlling, working for, profiting from, or volunteering for any business or entity engaged in tax return preparation;

g.     Further acting as a federal tax return preparer, including preparing, directing the preparation of, or assisting in the preparation of federal tax returns, amended returns, or other related documents and forms for anyone other than herself or her spouse;

h.     Promoting any false tax scheme;

2

i.     Engaging in any activity subject to penalty under 26 U.S.C. §§ 6694,

6695, 6700, or 6701; and

j.     Engaging in conduct that substantially interferes with the proper

administration and enforcement of the internal revenue laws.

2.     The United States also seeks an order under 26 U.S.C. § 7402(a)

requiring Rodriguez to disgorge to the United States her receipts for preparing

federal tax returns that make false or fraudulent claims.

3.     This action has been requested and authorized by the Chief Counsel of

the Internal Revenue Service, a delegate of the Secretary of the Treasury, and is

brought at the direction of a delegate of the Attorney General of the United States.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28

U.S.C. §§ 1340 and 1345.

5.     Venue is proper in this Court pursuant to 26 U.S.C. §§ 7407(a) and

7408(a) and 28 U.S.C. § 1391(b) because Rodriguez resides in Lakeland, Florida,

which is within this District, and a substantial part of the events or omissions

giving rise to the United States' claims occurred in this District.

## DEFENDANT'S BACKGROUND

6.     Rodriguez started preparing returns for customers in 2012 at Nancy's
Tax Returns, a return preparation business operated by her mother, Nancy Paulina
Cobielles-Ramos.

7.     Ramos did not identify herself or her business as the preparer on the
returns she filed for customers. Instead, she filed returns she prepared by
establishing a Turbo Tax account in the customer's name and under the customer's
email address, but with Ramos' phone number listed as the customer's contact
information.

8.     The returns Ramos filed with the IRS through Turbo Tax were styled
as self-prepared. After e-filing a customer's return, Ramos would print a copy,
alter the return to make it appear as though she identified herself as the return
preparer, and give the forged tax return copy to the customer.

9.     Rodriguez received on-the-job training from Ramos and continued the
pattern and practices described above in her own return preparation business.
Rodriguez's only other formal training in tax return preparation is the completion
of four online training courses offered by The Income Tax School in 2015.

10.     Rodriguez has prepared returns under the moniker Rodriguez Tax
Services, LLC since at least 2016.

11.     Rodriguez Tax Services, LLC is a fictitious entity. Rodriguez filed a fictitious name registration for it with the State of Florida in 2016.

12.     Rodriguez does not operate from a single location, but instead prepares returns from several offices located throughout Central Florida.

13.     Rodriguez prepares tax returns that understate her customers taxes and overstate the refunds she claims on their behalf by fabricating income, expenses, deductions, and credits she reports without her customers' knowledge.

14.     Rodriguez's schemes include:

a.     Falsely claiming residential clean energy tax credits for customers who never installed renewable energy technology in their primary residences and

b.     Claiming fictitious or inflated Schedule A deductions.

15.     Like her mother, Rodriguez also fails to identify herself as the return preparer on the Forms 1040 she files for customers.

## DEFENDANT'S GHOST PREPARATION ACTIVITIES

16.     Rodriguez operates as a ghost preparer because she does not identify herself on her customers' returns as the return preparer.

17.     The IRS requires businesses that file more than ten federal tax returns annually obtain an Electronic Filing Identification Number ("EFIN") that is reported on customers' Forms 1040. An EFIN is an identification number the IRS

issues to return preparers who have completed an e-file application and passed a suitability check. The EFIN is used to electronically file returns for customers. Rodriguez applied for and received two EFINs from the IRS, but she has never used them.

18.     Section 6109 of the Internal Revenue Code requires return preparers to identify themselves on the returns they prepare for customers by including their Preparer Tax Identification Number (PTIN) on the return. Return preparers that do not identify themselves on returns they prepare for customers are subject to a penalty under 26 U.S.C. §§ 6695(b), (c). The IRS refers to return preparers that do not identify themselves on returns they prepare as "ghost preparers."

19.     Rodriguez applied for and received her PTIN in December 2013, but has never used it.

20.     Like Ramos, Rodriguez files customer returns using Turbo Tax as if they are self-prepared by her customers. Although she applied for and received a PTIN and two EFINS, she does not use those identifiers on returns she prepares to mask her activities.

21.     Rodriguez uses a version of Turbo Tax designed for individual use, not for paid preparers, to prepare her customers' returns.

22.     Rodriguez establishes Turbo Tax accounts in her customers' names and e-files them as self-prepared under Turbo Tax's EFIN.

23.     Rodriguez prints out a copy of the e-filed return she files as "self-prepared," but alters it to include her name, address, and PTIN before giving the copy to her customer.

## DEFENDANT'S CUSTOMERS

24.     Customer 1 (C1) identified Rodriguez as the individual who prepared her Form 1040 federal income tax returns for tax years 2021 and 2022.

25.     Customer 2 (C2) and Customer (C3) are a married couple who identified Rodriguez as the individual who prepared their individual Form 1040 federal income tax returns for tax years 2021 and 2022.

26.     Customer 4 (C4) identified Rodriguez as the individual who prepared her Form 1040 federal income tax returns for tax years 2021 and 2022.

27.     Customer 5 (C5) identified Rodriguez as the individual who prepared his Form 1040 income tax returns for tax years 2019 through 2021.

28.     Customer 6 (C6) identified Rodriguez as the individual who prepared her Form 1040 income tax returns for tax years 2018 through 2021.

29.     Customers 7 and 8 (C7 and C8) are a married couple who identified Rodriguez as the individual who prepared their joint Form 1040 income tax return for tax year 2021.

30.     Customer 9 (C9) identified Rodriguez as the individual who prepared his and his wife's joint Form 1040 income tax return for tax years 2021 and 2022.

**DEFENDANT'S SCHEMES**

I.  *Fabricated Residential Clean Energy Credits*

31.     Taxpayers are entitled to a nonrefundable tax credit equal to a percentage of the cost of any renewable energy technology installed in their primary residence. *See* 26 U.S.C. § 25D.

32.     Renewable energy technology that qualifies for the residential clean energy tax credit includes solar electric panels, wind turbines, and fuel cells.

33.     Residential clean energy credits are claimed on a Form 5695 – *Residential Energy Credits* attached to a tax return.

34.     Rodriguez falsely claims residential clean energy tax credits for customers who never installed renewable energy technology in their primary residences.

35.     Rodriguez falsely claims residential clean energy tax credits without asking customers whether they installed renewable energy technology and without informing the customers that she has claimed the credit for them.

36.     Rodriguez falsely claimed fraudulent residential clean energy credits without her customers' knowledge on returns she prepared for tax years 2021 and 2022 based on solar electric energy or solar water heating costs her customers did not incur. Examples include:

8

a.   Rodriguez falsely reported that C1 paid $5,655 and $8,988 in solar energy costs in those years on returns she prepared for 2021 and 2022, and falsely claimed residential clean energy credits of $1,470 for 2021 and $2,696 for 2022 that C1 was not entitled to receive. C1 never told Rodriguez that she incurred these solar electric property expenses and did not know that Rodriguez claimed them on her return.

b.   Rodriguez falsely reported that C2 paid $6,898 in solar energy costs on his 2022 return and falsely claimed a residential clean energy credit of $2,595 that C2 was not entitled to receive. C2 never told Rodriguez that he incurred these solar electric property expenses and did not know that Rodriguez claimed them on his return.

c.   Rodriguez falsely reported that C3 paid $6,420 in solar water heating costs and $4,800 in solar energy costs on returns she prepared for 2021 and 2022. Rodriguez falsely claimed residential clean energy credits of $1,508 for 2021 and $1,742 for 2022 that C3 was not entitled to receive. C3 never told Rodriguez that she incurred these solar electric property expenses for 2021 and 2022 and did not know that Rodriguez claimed them on her return.

d.   Rodriguez falsely reported that C4 paid $9,558 in solar energy costs on his 2022 return and falsely claimed a residential clean energy credit of

$2,867 that C4 was not entitled to receive. C4 never told Rodriguez that he incurred these solar electric property expenses for 2022 and did not know that Rodriguez claimed them on his return.

e. Rodriguez falsely reported that C9 paid $4,788 in solar electric property costs on his 2022 return and claimed a residential clean energy credit of $1,436 that C9 was not entitled to receive. C9 never told Rodriguez that he incurred these solar electric property expenses for 2022 and did not know that Rodriguez claimed them on his return.

37.     Rodriguez's practice of falsely claiming residential clean energy tax credits her customers were not eligible to receive resulted in an aggregate tax loss to the United States of over $1.5 million for 2021 and 2022.

## II.   *Fictitious Schedule A Deductions*

38.     Schedules A are used by taxpayers who itemize deductions rather than claim the standard deduction from adjusted gross income.

39.     Itemized deductions claimed on a Schedule A include eligible medical and dental expenses not covered by health insurance. *See* 26 U.S.C. § 213.

40.     Other types of itemized deductions include mortgage interest payments and charitable contributions of money or property by taxpayers to qualifying organizations. *See* 26 U.S.C. §§ 163(h)(3), 170(c).

41.     To claim a charitable contribution deduction, taxpayers are required to keep records for cash contributions and complete a Form 8283 – *Noncash Charitable Contributions* for any noncash contribution that exceeds $500.

42.     Rodriguez prepares tax returns that fraudulently underreport the taxes her customers owe by claiming itemized deductions for fictitious or inflated medical and dental expenses, mortgage interest, cash charitable contributions, and other miscellaneous deductions.

43.     Rodriguez falsely claimed itemized deductions on Schedules A she attached to tax returns for these customers:

a. Rodriguez claimed $59,335 in itemized deductions on C1's Schedule A for 2021, consisting of fictitious medical and dental expenses, charitable contributions, home mortgage interest, and other expenses. After being notified that C1 was being audited, Rodriguez amended C1's 2021 tax return to reduce (to $36,645) but not eliminate the fictitious deductions she claimed for 2021. Undaunted, Rodriguez claimed $55,665 in falsified itemized deductions for the same fictitious expenses on C1's Schedule A for 2022. Except for home mortgage interest for an amount far less than Rodriguez claimed for 2022, C1 did not incur those expenses, never told Rodriguez that she did, and was unaware Rodriguez falsified deductions on her return. The IRS disallowed all the itemized deductions Rodriguez

claimed on the 2021 return and all but the correct amount of home mortgage interest she claimed on the 2022 return.

b.  Rodriguez claimed itemized deductions totaling $57,453 on C2's Schedule A for 2021 and $51,648 for 2022. The deductions consisted of fictitious medical and dental expenses, taxes paid, charitable contributions, mortgage interest, and other expenses. C2 did not incur those expenses and never told Rodriguez that he did. C2 did not know that Rodriguez claimed these deductions and confirmed to the IRS that he had no right to claim them. The IRS disallowed the itemized deductions on the 2021 and 2022 returns.

c.  Rodriguez claimed $21,760 in itemized deductions on C3's Schedule A for 2021, consisting of fictitious medical and dental expenses, charitable contributions, mortgage interest, and taxes paid. C3 did not incur those expenses and never told Rodriguez that she did. C3 did not know that Rodriguez claimed these deductions and confirmed to the IRS that she had no right to claim them. The IRS disallowed the deductions.

d.  Rodriguez claimed $64,140 in itemized deductions on C4's Schedule A for 2021, and another $55,026 in itemized deductions on C4's Schedule A for 2022, consisting of fictitious medical and dental expenses, mortgage interest, taxes paid, and other expenses. C4 did not incur those

expenses and never told Rodriguez that he did. C4 did not know that Rodriguez claimed these deductions and confirmed to the IRS that he had no right to claim them. The IRS disallowed the deductions.

e.  Rodriguez claimed $25,266 in itemized deductions on C5's Schedule A for 2021 consisting of fictitious medical and dental expenses, charitable contributions, and other expenses. C5 never told Rodriguez that he incurred those expenses. C5 did not know that Rodriguez claimed these deductions and confirmed to the IRS that he could not claim them. The IRS disallowed the deductions.

f.  Rodriguez claimed $23,397 in itemized deductions on C6's Schedule A for 2020, and another $32,068 in itemized deductions on C6's Schedule A for 2021, consisting of fictitious medical and dental expenses, taxes paid, and other expenses. C6 did not incur the expenses Rodriguez claimed, never told Rodriguez that she did, did not know that Rodriguez claimed these deductions, and confirmed to the IRS that she could not claim them. The IRS disallowed the deductions.

g.  Rodriguez claimed $40,452 in itemized deductions on C7 and C8's Schedule A for 2021, consisting of fictitious medical and dental expenses, taxes paid, mortgage interest, and charitable contributions. C7 and C8 did not incur the expenses Rodriguez claimed, and never told

Rodriguez that they did. C7 and C8 did not know that Rodriguez claimed these deductions and confirmed to the IRS that they could not claim them. The IRS disallowed the deductions.

h.  Rodriguez claimed $42,190 in itemized deductions on C9's Schedule A for 2021, and $56,180 in itemized deductions on C9s Schedule A for 2022, consisting of fictitious charitable contributions and other expenses along with grossly inflated medical and dental expenses. Neither C9 nor his wife incurred these expenses and never told Rodriguez that they did. C9 did not know that Rodriguez claimed these deductions and confirmed to the IRS that he could not claim them. The IRS disallowed the deductions.

44.  By falsely claiming fictitious and exaggerated Schedule A deductions, Rodriguez fraudulently underreports the taxes her customers owe.

45.  Rodriguez's practice of claiming inflated or false Schedule A deductions to fraudulently underreport the tax her customers owe resulted in an estimated cumulative tax loss to the United States of over $4.5 million for 2021 and 2022.

## Harm Caused by the Defendant's Conduct

46.    Rodriguez's pattern of preparing returns that understated her customers' taxes and overstated their refunds through the schemes described above resulted in the loss of significant tax revenue to the United States.

47.    Based on the returns it has examined, the IRS estimates that Rodriguez's actions have caused the United States to lose over $700,000 in tax revenue for 2021 and almost $5.5 million in tax revenue for 2022.

48.    Between 2016 and 2022, Rodriguez also falsely claimed almost $150,000 in fraudulent Schedule A deductions on her personal tax returns.

49.    Along with lost tax revenue, the United States must bear the substantial cost of examining returns Rodriguez prepares and collecting the understated liabilities from her customers.

50.    Rodriguez's tax preparation schemes extend far beyond the mere content of the returns. Her fraudulent activities extend to misrepresenting who exactly prepared returns.

51.    It is extremely difficult for the IRS to identify and detect some of Rodriguez's illicit tax preparation activities because she operates as a ghost preparer. Once detected, it is hard to quantify exactly how many tax returns Rodriguez prepared and filed for her customers.

52.     The IRS estimates that Rodriguez prepares on average over 1,200 tax returns every year.

53.     Rodriguez's illegal conduct also harms honest tax return preparers because, by preparing tax returns that unlawfully inflate her customers' refunds, Rodriguez has a competitive advantage over tax return preparers who prepare returns in accordance with the law. Customers who are satisfied with tax refunds they receive are often unaware of Rodriguez's illegal return preparation practices and return to her for subsequent tax seasons.

54.     Rodriguez's actions undermine confidence in the federal income tax system. Rodriguez's customers trust – and pay – her to prepare honest returns. Rodriguez betrays that trust and harms her customers, who must foot the bill for the deficiencies and, potentially, interest and penalties resulting from her conduct.

55.     Rodriguez's activities encourage noncompliance with the internal revenue laws by failing to confirm with her customers that their returns honestly and accurately reflect the information they provided.

56.     Finally, Rodriguez's actions undermine Congress' intent in implementing many aspects of the internal revenue code that rewards taxpayers for engaging in certain behaviors. Congress chose to provide tax benefits in the form of credits and deductions to taxpayers who invest in solar technologies, incur extensive medical or dental costs, and make significant charitable donations. By

misrepresenting her clients' situations, Rodriguez defrauds the United States

Treasury, and overrides Congress' directives in incentivizing certain actions.

### COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407
### FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 AND 6695

57.    The United States incorporates by reference the allegations in

paragraphs 1 through 56.

58.    Section 7407 of the Internal Revenue Code authorizes a district court

to enjoin a person who is a tax return preparer from engaging in certain conduct or

from further acting as a tax return preparer. Rodriguez has engaged in the

following prohibited conduct that justifies an injunction against her under section

7407:

a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which

penalizes a tax return preparer who prepares a return that contains an

understatement of tax liability or an overstatement of a refund due to an

unreasonable position that the preparer knew or should have known was

unreasonable;

b.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which

penalizes a tax return preparer who prepares a return that contains an

understatement of tax liability or an overstatement of a refund due to

willful or reckless conduct;

17

c.    Engaging in conduct subject to penalty under 26 U.S.C. § 6695(a), which penalizes a tax return preparer who fails to furnish a completed copy of any return or claim for refund to the taxpayer;

d.    Engaging in conduct subject to penalty under 26 U.S.C. § 6695(b), which penalizes a tax return preparer for failing to sign the returns he or she prepares for customers;

e.    Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes a tax return preparer for failing to furnish her identifying number on the returns he or she prepares for customers as required under 26 U.S.C. § 6109(a); and

f.    Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

59.    For a court to issue such an injunction, the court must find that:

a.    The tax return preparer engaged in the prohibited conduct; and

b.    Injunctive relief is appropriate to prevent recurrence of such conduct.

60.    If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would be insufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

61.     Rodriguez has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that understate her customers' tax liabilities and overstate their refunds. As described above, Rodriguez has prepared returns that claim energy credits her customers were not entitled to receive and itemized deductions for expenses they did not incur. Rodriguez has done so with the knowledge that the positions she took on the returns were unreasonable and lacked substantial authority. Rodriguez has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

62.     Rodriguez has also engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating her customers' liabilities and acting with a reckless and intentional disregard of rules and regulations.

63.     Rodriguez's conduct substantially interferes with the administration of the internal revenue laws. Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Rodriguez is likely to continue preparing false federal income tax returns.

64.     A narrower injunction would be insufficient to prevent Rodriguez's interference with the administration of the internal revenue laws. Rodriguez prepares returns understating her customers' liabilities and overstating their refunds through multiple schemes that report false information on their customers' tax returns. Failure to permanently enjoin Rodriguez will require the IRS to spend

additional resources to uncover her future schemes. The harm resulting from these schemes includes both the expenditure of these resources and the revenue loss caused by the improper deductions and credits Rodriguez claims on returns she prepares. Accordingly, only a permanent injunction can prevent future harm.

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701

65.    The United States incorporates by reference the allegations in paragraphs 1 through 56.

66.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

67.    Rodriguez has engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that she knew to be improper, false, or inflated.

68.    Rodriguez's repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent recurrence of this conduct.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH ENFORCEMENT OF INTERNAL REVENUE LAWS

69.    The United States incorporates by reference the allegations in paragraphs 1 through 56.

70.     Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

71.     Rodriguez has repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

72.     Unless enjoined, Rodriguez is likely to continue to engage in such conduct and interfere with the enforcement of the internal revenue laws.

73.     Rodriguez's conduct has caused and will continue to cause substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Unless Rodriguez is enjoined from preparing returns, the IRS will have to devote additional substantial and unrecoverable time and resources auditing her customers individually to detect understated liabilities and overstated refund claims. The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Rodriguez would be a significant burden on IRS resources.

74.     Enjoining Rodriguez from engaging in such conduct is in the public interest because an injunction, backed by the Court's contempt powers, is likely to stop Rodriguez illegal conduct and the harm it causes to her customers and the United States.

75.     An injunction under 26 U.S.C. § 7402 is necessary and appropriate because the United States has no adequate remedy at law.

### COUNT IV: DISGORGEMENT OF ILL-GOTTEN GAINS UNDER 26 U.S.C. § 7402(a)

76.     The United States incorporates by reference the allegations in paragraphs 1 through 56.

77.     Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

78.     Rodriguez's conduct substantially interferes with the enforcement of the internal revenue laws. Specifically, Rodriguez claimed and continues to claim credits and deductions her customers are not entitled to. These false claims allow Rodriguez to fraudulently reduce the taxes her customers report and pay.

79.     Rodriguez unjustly profits from her misconduct at the expense of the United States. She attracts customers and gains fees by filing fraudulent returns that claim tax credits her customers are not eligible to receive and deducts fictitious expenses they did not incur.

80.     Rodriguez is not entitled to these ill-gotten gains. Using its broad authority under § 7402(a), the Court should order Rodriguez to disgorge to the United States the unlawful profits (in the form of fees subtracted from customers'

tax refunds) she obtained for preparing federal tax returns that make grossly incompetent, negligent, reckless, and fraudulent claims.

## RELIEF SOUGHT

WHEREFORE, Plaintiff, the United States of America, asks for the following:

A.   That the Court find:

1.   Kenia Rodriguez has repeatedly and continually engaged in the conduct described above, which is subject to penalty under 26 U.S.C. §§ 6694 and 6695, and other fraudulent or deceptive conduct, which substantially interferes with the proper administrative of the internal revenue laws;

2.   injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

3.   a narrower injunction enjoining Rodriguez from only specified conduct would be insufficient to prevent her interference with the proper administration of the internal revenue laws;

4.   Rodriguez has engaged in conduct subject to penalty under 26 U.S.C. § 6701, and injunctive relief is appropriate to prevent the recurrence of such conduct pursuant to 26 U.S.C. § 7408;

5. Rodriguez has repeatedly and continually engaged in the conduct described above, which is conduct that substantially interferes with the enforcement of the internal revenue laws, and the entry of injunctive relief against Rodriguez is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

B. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Rodriguez, any entity through which Rodriguez conducts business, and all persons and entities in active concert or participation with Rodriguez, from directly or indirectly:

1. Owning, managing, assisting, or working at a business that prepares or assists in the preparation of tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents;

2. Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

3. Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms,

24

including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

4. Preparing, filing, or assisting in the preparation or filing of federal tax returns, amended returns, and related documents and forms that she knows will result in the understatement of any tax liability of the overstatement of federal tax refunds;

5. Maintaining any association with, or profiting from, a tax return preparation business;

6. Instructing, teaching, or otherwise training any person in the preparation of federal tax returns, amended returns, and related documents and forms;

7. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

8. Engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

9. Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

25

C.    That the Court order, without further proceedings, the immediate

revocation of the Preparer Tax Identification Number (PTIN) that is held

by, or assigned to, or used by Rodriguez pursuant to 26 U.S.C. § 6109,

and the EFIN held by, assigned to, or used by Rodriguez;

D.    That the Court enter an order allowing the United States to monitor

Rodriguez's compliance with this injunction and to engage in post-

judgment discovery in accordance with the Federal Rules of Civil

Procedure;

E.    That the Court require Rodriguez, pursuant to 26 U.S.C. § 7402(a), to

disgorge to the United States the unlawful profits (the amount of which is

to be determined by the Court) that she obtained through fees for

preparing federal tax returns that make grossly incompetent, negligent,

reckless, and fraudulent claims;

F.    That the Court retain jurisdiction over Rodriguez and this action to

enforce any permanent injunction entered against her; and

G.    That the Court award the United States its costs incurred in connection

with this action, along with such other and further relief as the Court

deems appropriate.

Dated:  March 12, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

**_/s/ Andrew J. Weisberg_**
Andrew J. Weisberg
NY Bar No. 5616321

**_/s/ Malcolm M. Murray_**
Malcom M. Murray
PA Bar No. 317831

Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
(202) 616-3884 (v-Weisberg)
(202) 307-6499 (v-Murray)
(202) 514-4963 (f)
Andrew.J.Weisberg@usdoj.gov
Malcolm.Murray@usdoj.gov

*Of Counsel:*

ROGER B. HANDBERG
United States Attorney
Middle District of Florida

*For Plaintiff United States*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 1.08(a) and 1.08(b), that this document has been typed using 14-point Times New Roman font and is double-spaced with one-inch margins.

*/s/ Andrew J. Weisberg*
Andrew J. Weisberg
Trial Attorney
U.S. Dept. of Justice, Tax Division
